HARDY, Judge.
This is an action for personal injuries resulting from a motor vehicle accident. Named as defendants are International Paper Company and its employee, Robert L. Day, driver of one of its trucks, whose negligence plaintiff alleges to have been the cause of the accident. Transport Insurance Company, the compensation insurer of plaintiff’s employer, intervened in this suit, praying for recovery of amounts paid or to be paid to defendant. From judgment in favor of defendants rejecting plaintiff’s demands, both plaintiff and intervenor have appealed.
The accident which is the basis for this action occurred about midnight on September 12, 1958, on Highway 165 in Morehouse Parish about two and one-half miles south of the Village of Bonita. At the site of the accident the two-lane concrete highway is approximately 18 feet in width, and, at the time, the highway surface was dry, visibility normal and the weather clear, but the shoulders of the highway were muddy and soggy as the result of recent rains. Immediately prior to the accident two heavily loaded truck-trailer units, carrying freight being transported by Herrin Transportation Company, were moving south on the highway. The lead truck was driven by plaintiff, Davis, and was followed at a distance of approximately 800 feet by the second truck driven by Charles Unsworth. Two similar truck-trailer units of defendant, International Paper Company, also heavily loaded, were moving north on the highway, the lead truck being driven by Cecil Lilly, and the second truck, about one-quarter mile to the rear, by defendant, Robert L. Day. Although Highway 165 runs generally in a north-south direction, it makes a sweeping “S” curve in approaching and descending from a high overpass clearing the tracks of the Missouri-Pacific Railroad so that in the immediate vicinity of the accident the compass direction of the highway is almost east and west. However, to preserve consistency in our narrative of facts and in order to avoid confusion, we here *115 after refer to the highway direction as north and south.
It is the contention of plaintiff that, as he was within his proper west lane of the highway in the curve leading to the overpass, the International truck, driven by Day, after descending the incline of the overpass, encroached upon plaintiff’s lane to an extent of approximately thirty inches, forcing him to move his heavily loaded unit off of the concrete slab and onto the muddy shoulder of the highway. In this position plaintiff maintained control of his truck until the right wheels of the cab struck a concrete drainage culvert, whereupon he lost control of his vehicle, which, after moving an additional distance, collided with a number of steel guard rails on the incline to the overpass, causing his unit to overturn down the steep embankment. The testimony of all witnesses consistently fixed the width of all trucks involved as being eight feet each, and it is, therefore, evident that in a passing movement the eighteen foot width of the highway admitted only of a two foot clearance between vehicles of this type.
The issue presented on this appeal is purely factual and is reduced to resolution of the alleged negligence of International’s driver-employee, Day, in encroaching upon the wrong lane of the highway. Before this court counsel for appellants contend that the evidence preponderates in favor of plaintiff’s claims of negligence against the defendant, Day. To the contrary, counsel for defendants urged that the record fails to establish such negligence by the requisite preponderance of evidence.
Plaintiff’s petition, which was filed one day less than one year following the accident, in describing the occurrence alleged:
“ * * * that as the said truck operated by Robert L. Day came out of the said curve and was within a distance of approximately one hundred (KXK) feet of the vehicle driven by your Petitioner the said truck driven by Robert L. Day started drifting over into its left lane of the said highway with the wheels of the said truck and trailer crossing the center line of the said highway and coming over into the west half of the said highway, occupied by the truck and trailer driven by your Petitioner, some three (3') feet or more and that the drifting movement of the said truck operated by Robert L. Day continued and that your Petitioner then and there pulled as far to his right side of the highway as was possible and in order to avoid an immediate collision with the said truck and trailer driven by Robert L. Day your Petitioner was forced to cut his said truck and heavily loaded trailer off the right or west side of the highway and forced the right wheels of the said unit off the said concrete slab highway and that the dirt shoulders bordering the said highway were soft and muddy from previous rains and that when the wheels of truck and trailer operated by your Petitioner left the west edge of the said highway, they sunk in the said mud and soft dirt and caused your Petitioner to lose control over his said truck and trailer and that the drive wheels of the said truck hit steel guard rails on the west side of the said highway and caused a further loss of control and that the truck and trailer driven by your Petitioner went on through the steel guard rails and overturned on its right side, some distance off the highway and on a sharp incline, and that the said truck driven by Robert L. Day had crossed the center line of the said highway and had infringed some three (3') feet or more into the west half of the said highway and into the traffic lane dedicated to the use of southbound traffic and that the said truck and trailer driven by Robert L. Day forced the truck and trailer driven by your Petitioner off the said highway and by its negligent and improper handling presented your Petitioner with an emergency not of his own making and caused your said Peti *116 tioner to cut and swerve his said heavy-vehicle and trailer off the highway to avoid immediate and imminent collision * *
On trial of the case, which was begun September 19, 1961, approximately three years after the accident, the plaintiff's testimony varied considerably from the recitals of the above allegation of his petition, for he testified that he did not cut nor swerve his vehicle abruptly or sharply to the right, but, after perceiving the fact that the approaching truck was partially in his lane of travel, he moved his vehicle off the pavement a sufficient distance to avoid collision.
The discovery deposition of plaintiff, which was taken May 23, 1960, and introduced in evidence on behalf of defendants, is sharply at variance with the testimony given on trial. In his deposition plaintiff declared that the approaching truck was approximately 50 to 100 feet distant when he realized it was about 30 to 36 inches over the center line into his lane of travel, whereupon he cut his vehicle hard and abruptly to the right onto the shoulder of the road.
Considering the fact that the trucks were approaching each other at combined speeds of approximately 90 miles per hour, the conclusion is inescapable that neither plaintiff’s allegations nor his testimony on discovery deposition will stand up under close examination.
The physical facts were established by the testimony of the State Trooper, W. L. Smith, who made an investigation at the scene of the accident shortly after its occurrence. According to the Trooper’s testimony, the tracks of plaintiff’s truck were plainly visible so that he was able to ascertain the exact point at which the vehicle left the highway and trace its progress up to the point of impact with the guard rails located at the edge of the highway on the incline to the overpass. According to Trooper Smith’s testimony, there was not the slightest evidence of any abrupt swerving of plaintiff’s vehicle; after leaving the highway the track of the right wheels continued in a straight line from six to eight inches off of the concrete slab for a distance of approximately 120 feet, where they struck a mudhole on the shoulder,' thence continued some 336 feet, more or less, where the vehicle struck the culvert; at which point the evidence indicates that Davis lost control. The Trooper further testified that he found no evidence as the result of his examination which would indicate that the Herrin vehicle had been forced off of the road.
The defendant, Day, testified that, at all times, he was within his proper lane of travel on the highway; that, as he passed plaintiff’s truck, mud splashed up onto his windshield and obscured his vision; that he put his head outside the left window of the truck cab and continued along the highway, shortly thereafter blinking his lights to attract the attention of Lilly, the driver of the leading International truck; the two trucks came to a stop and Day and Lilly attempted to wipe the mud from the former’s windshield, without success, whereupon they drove to the Village of Bonita and stopped at a filling station in order to use clean water to clear the truck windshield.
According to the testimony of both Day and Lilly, while they were engaged in this operation an unidentified Negro parked his truck near their vehicles, came over to them and reported that one of the Herrin trucks had been forced off of the highway back down the road near the overpass. Upon receipt of this information, Lilly drove off, located the Town Marshall of the Village of Bonita and returned to the filling station where Day was waiting. Thereafter, Day, Lilly and the Marshall returned to the scene of the accident.
The testimony of the witnesses as to the incidents which occurred after the events above narrated is so vague and uncertain that we have been unable to winnow any persuasive grains of proof from the chaff of confusion.
*117 Plaintiff depends, in great degree, for corroboration of material portions of his testimony upon the deposition of one Lester R. Lewis, who was driving north following the International truck driven by Day. Careful examination of the testimony of this witness has completely failed to convince us that he observed the accident or was in a position to do so.
The written opinion of the district judge, after separately analyzing the testimony of the material witnesses, contains the following statement which formed the basis for his judgment, and with which we are in full accord:
“From the testimony of the witnesses there were only two people who actually saw what transpired, Mr. Davis, the driver of the Herrin truck, which turned over and Mr. Day, the driver of the International Paper Company truck which passed him. There were no physical contacts between the trucks. Mr. Day stated as he passed the International truck driven by Davis that he was on his right side of the highway and at that time Davis was off the highway. There' was no evidence that the mud spattered on the windshield could have come from anywhere else except off the shoulder at the place where the two trucks passed. Trooper Smith fixed the mud hole at 120 feet west or south of where the Herrin truck left the road and the distance from where the Herrin truck left the road to the culvert where Mr. Davis lost control was fixed at 456 feet. The plaintiff, Claude Davis, in his petition alleged that he had to swerve or cut his truck off the road to avoid an accident. Trooper Smith found no evidence indicating that the truck had been cut or a sharp swerve made. Mr. Lewis first testified that he. saw the accident but later testified that he saw the International Paper truck before the accident happened, over the center line. From his testimony fixing his position at the time of the accident and the distances set forth on the plat, it was physically impossible for him to have seen what transpired.”
In our opinion, the established physical facts substantially corroborate the version of the accident as given in the testimony of the defendant, Day, whereas the testimony of the plaintiff, Davis, cannot be reconciled with such facts.
It is our conclusion that plaintiff has failed to prove his case by a preponderance of the evidence. It follows that the judgment appealed from should be, and, accordingly, it is affirmed at appellant’s cost.